UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SHAYNE & KEITH LUNDY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-06-69 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM ORDER & OPINION**

Pending before the Court is Defendant's Motion to Dismiss (Dkt. # 5) under Federal Rule of Civil Procedure 12(b)(1). After considering the briefs of the parties, the entire record, and the applicable law, the Court is of the opinion that the motion should be DENIED.

**Factual and Procedural Background**

Plaintiffs Shayne and Keith Lundy claim that their civil rights were violated when they were arrested by border patrol agents on November 9, 2004. On June 13, 2005, the Lundys mailed separate documents known as SF-95s to the U.S. Department of Homeland Security notifying that agency of their claims. The SF-95 is the standard form promulgated by the Justice Department pursuant to federal regulations for claims against the United States for damages, injury, or death.

In correspondence dated December 12, 2005, U.S. Border Patrol Chief David V. Aguilar wrote separately to the Lundys' attorney that their claims had been denied by the agency and that the Lundys had the right, if they were dissatisfied with the agency's decision, to file a civil action within six months. The letters were signed by Aguilar and indicated above the addressee's name and address that the letters were sent via certified mail. The letter regarding Keith Lundy's claim bore certified mail receipt number 7004 1350 0004 3559 7834; the letter regarding Shayne Lundy's claim bore

certified mail receipt number 7004 1350 0004 3559 7827. The Government claims that the letters were mailed via those certified mail receipt numbers and also submitted fax cover sheets indicating that Brigida Pirra, who was then an attorney for the border patrol, faxed both letters to the Lundys' attorney on December 12, 2005, the same date that the letters purport to have been signed by Aguilar.

The Lundys concede that they received the faxed letters from Pirra on December 12, 2005, but claim to have never received the letters via certified mail. The Government claims that the letters were, in fact, sent via certified mail, but concedes that it cannot produce the return receipts confirming that the letters were delivered. In a declaration signed by Pirra on September 27, 2006, she indicated that it was her standard practice to send denial letters like the ones addressed to the Lundys' attorney via certified mail. However, it is not clear from Pirra's declaration that she has any specific memory of doing so in this case. The Lundys filed their lawsuit on June 26, 2006.

The Government argues that the Lundys' lawsuit should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the Lundys filed their lawsuit more than six months after receiving actual notice of the denial of their claims via the copies of the letters signed by Aguilar and faxed by Pirra on December 12, 2005. In the alternative, the Government argues that there is insufficient evidence in the record for the Court to conclude that Pirra failed to mail the denial letters via certified mail. The Lundys argue that the statute relied upon by the Government for the six-month deadline required the Government to mail the denial letters via either certified or registered mail and, therefore, that the faxed letters from Pirra are insufficient. The Lundys further argue that the Government's failure to produce the certified mail receipts, or otherwise prove that the letters were actually sent via certified mail, precludes dismissal under Rule 12(b)(1). The Court agrees.

**Discussion**

A tort claim against the United States is subject to the limitations periods set forth in the Federal Torts Claim Act at 28 U.S.C. § 2401(b), which provides that such claims

> shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). A companion statute, 28 U.S.C. § 2675(a), essentially repeats the requirement that agency denials be "in writing and sent via certified or registered mail." Moreover, § 2675(a) further provides that

> the failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. 2675(a).

The Fifth Circuit has held that the limitations periods set forth in § 2401(b) are jurisdictional. *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995), *cert. denied*, 519 U.S. 927 (1996); *Houston v. United States Postal Service*, 823 F.2d 896, 902 (5th Cir. 1987), *cert. denied*, 485 U.S. 1006 (1988). By its terms, § 2401(b) sets forth two separate deadlines. The first is the two-year period after a claim accrues, during which claimants must present their claims in writing to the appropriate agency to give the Government an opportunity to settle the claim without litigation. This two-year deadline is the one that the Lundys were complying with by mailing their separate SF-95s to the U.S. Department of Homeland Security on June 13, 2005, less than one year after their allegedly unlawful arrest. There is no dispute that the Lundys met the first deadline.

The second deadline obligates claimants like the Lundys to file suit, if they are dissatisfied with the agency decision, within six months "after the date of mailing, by certified or registered

mail, of notice of final denial by the agency." The parties essentially dispute whether the two letters signed by Aguilar constitute a "final denial of the claim by the agency" such that the six-month deadline began to run on December 12, 2005. There are, in turn, two contingent questions raised regarding the six-month deadline, one or both of which the Court must resolve in order to rule on the Government's motion.

The first question relates to whether, as the Government claims, Pirra mailed the two denial letters via certified mail. If yes, then it would appear that the motion should be granted because it is undisputed that the Lundys filed their lawsuit more than six months after December 12, 2005, the date on which the Government claims to have mailed the denial letters. If not, then the Court will be obliged to answer the second question, which relates to whether the letters that were undisputedly faxed by Pirra and received by the Lundys' attorney on December 12, 2005, were sufficient under § 2401(b) to constitute the notice required to trigger the six-month deadline. If the Court answers both questions in the negative, then it would appear that the motion should be denied pursuant to 28 U.S.C. § 2675(a), which provides that the "failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

**(a) Were the denial letters mailed to the Lundys via certified mail?**

The burden or proof in a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is on the party asserting jurisdiction, in this case, the Lundys. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.*

The Lundys rely on three pieces of evidence to prove that the denial letters were not mailed

via certified or registered mail: (1) the undisputed fact that neither they nor their attorney ever received the denial letters in the mail via certified or registered mail; (2) two screen-shots from the United States Postal Services' website that purport to establish that the two certified mail receipt numbers listed on the denial letters were never issued; and (3) the undisputed fact that the Government is unable to produce the return receipts – or "green cards" – for either of the denial letters. The Government relies on two pieces of evidence to prove that the denial letters were mailed via certified or registered mail: (1) the fact that both letters indicate that they were mailed via certified mail and (2) the unsworn signed declaration of Pirra.

After reviewing the evidence advanced by both parties, the Court concludes that it should attach no weight to (1) the two United States Postal Service screen-shots and (2) the certified mail receipt numbers purporting to indicate that the denial letters were mailed via certified mail. As to the screen-shots, the Court is unable to determine based on the evidence included in the record that these documents prove that mailing via certified mail was either more or less likely. While it is true that both screen-shots state that "[t]here is no record" of either alleged receipt number, the Court notes that the searches appear to have been run on September 19, 2006, just a few days before the screen-shots were filed among the papers of this case on September 21, 2006, and some nine months after the Government purports to have mailed the denial letters in December 2005. But there is no indication or proof that such numbers would still be searchable in this fashion – or remain in the postal service's database – for so long. In other words, the Court is simply unconvinced that the only conclusion to be drawn from this evidence is that the denial letters were not, in fact, mailed via certified mail.

The Court is, for similar reasons, equally unimpressed by the fact that the letters state that

they were sent via certified mail and list certified mail receipt numbers. Such conclusory evidence simply has no bearing whatsoever on the disputed fact in this case. And while there is no reason to disbelieve that the typist of these letters had actual certified mail applications at hand providing the receipt numbers stated on the letters, such evidence does not make it more or less likely that they were, in fact, mailed via certified mail according to these receipt numbers.

The Court is left, therefore, with three remaining pieces of evidence: (1) the undisputed fact that the letters were never received; (2) the undisputed fact that the Government cannot produce the green cards; and (3) Pirra's declaration. Of these, only Pirra's declaration requires further description. Pirra stated that while she was employed as a border patrol lawyer, "it was my standard practice to prepare in advance the certified mail and return receipt material before I obtained authorized signatures for such items as denial letters." She further stated that after receiving the signed letters from Aguilar, "I would have caused to be mailed the originals to [the Lundys' lawyer] via certified mail ... as indicated on the letters." Further, she stated that "[i]n this case, I sent the letters by facsimile before causing them to be mailed." Finally, Pirra stated that (1) she did not know why the green cards are not in her file maintained by the border patrol and (2) even though the green cards are not in the file, it was noteworthy that the original denial letters signed by Aguilar are not among the papers in the file either, which she apparently regards as a further indication that the letters must have been mailed.

Pirra's declaration is confusing. First she states that she "would have caused," in accordance with her "standard practice," the letters to be mailed via certified mail. These statements seem to indicate that Pirra does not have a specific memory of sending the Lundys' denial letters via certified mail. Rather, she appears to be encouraging the Court to imply what she actually did

with the letters from what she usually did with other such letters.  But then she goes on to state that "[i]n this case, I sent the letters by facsimile before causing them to be mailed," which would appear to be a direct statement of her specific memory with respect to the Lundys' letters in particular.  But this direct statement does not indicate whether she specifically remembers mailing them via certified mail.  These internal contradictions preclude the Court from relying on Pirra's declaration as proof that the denial letters were mailed via certified mail.

It is the Court's opinion that the most compelling evidence are the remaining undisputed facts: (1) the Lundys never received the letters and (2) the Government cannot produce the green cards.  The absence of the green cards is of particular import.  In *Mulder v. Commissioner of Internal Revenue*, 855 F.2d 208 (5th Cir. 1988), the Fifth Circuit made the following comments in a case requiring it to determine whether the IRS had exercised due diligence in ascertaining the address of a taxpayer:

> [T]he IRS file does not contain either the original letter or the executed return receipt. While it is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered, **no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender** .... As the [Seventh Circuit has] observed, "[t]he fact that the Commissioner's file contains no return receipt for the [deficiency] notice ... fosters the conclusion that fault for the petitioner's failure to receive notice must rest with the Postal Service or the Commissioner, but, in any event, not with petitioners.  Either the Postal Service mishandled the notice or the Commissioner's agents misplaced the return receipt" .... The court concluded that if the delivery receipt was not returned to the IRS, the notice letter must not have been delivered.

*Mulder*, 855 F.2d at 211–12 (emphasis added) (quoting *McPartlin v. Commissioner*, 653 F.2d 1185, 1191 (7th Cir. 1981)).  In another case, the Tenth Circuit, also commenting on the *McPartlin* court's treatment of certified mail, noted that

> [The reason for the *McPartlin* court's holding] is that the sender of a certified letter who does not receive the return receipt is on notice that the addressee may not have received

> the letter .... It is then incumbent upon the sender to inquire with the addressee or send the letter again. In this case, plaintiff did neither.

*Moya v. United States*, 35 F.3d 501, 504 (10th Cir. 1994) (citing *McPartlin*, 635 F.2d at 1191). *See also Nibagwire v. Gonzales*, 450 F.2d 153, 156 (4th Cir. 2006) ("The strong presumption of delivery is justified for certified mail because of the extra assurances of effective delivery provided by the U.S. Postal service. When certified mail is used, the Postal Service's delivery efforts are documented: there is a return receipt or written proof of attempted delivery and notification to the addressee of certified mail.") (citation omitted).

None of the cases cited here – *Mulder*, *McPartlin*, *Moya*, and *Nibagwire* – deal with the issue of notice under the statute at issue in this case. Rather, each of them deal with other instances in which federal law either requires that something be mailed via certified or registered mail or in which a party has relied upon the presumption afforded to certified mail to prove that something was mailed or received. This Court is, however, satisfied that these cases reflect a broad judicial consensus on certified mail; specifically, that any presumption in favor of mailing or delivery is destroyed when the sender cannot produce the return receipt. Accordingly, and after carefully reviewing the facts of this case, the Court can only conclude that the Government failed to mail the Lundys' denial letters via certified or registered mail.

**(b)     Were the faxed denial letters sufficient under § 2401(b) to constitute the notice required to trigger the six-month filing deadline?**

Having answered the first question in the negative, the Court next turns to whether the denial letters that were faxed by Pirra are sufficient – that is, whether actual notice is sufficient – under §2401(b) to trigger the Lundys' six-month filing deadline. Plaintiffs rely principally on what appears to be the only Fifth Circuit opinion to have addressed the "certified or registered mail"

8

requirement in §2601(b).  *See Flory v. United States*, 138 F.3d 157 (5th Cir. 1998).  The plaintiff in *Flory* sued the Government after he tripped over a dolly in the lobby of a post office.  Flory timely filed an administrative claim to which the Government responded, offering to settle the claim for the amount of the plaintiff's medical expenses or, in the alternative, prospectively denying the claim if the plaintiff rejected the settlement offer, by letter mailed via regular mail on December 20, 1993. *Flory*, 138 F.3d at 158.  Some five months later, but still within the six-month deadline imposed by § 2401(b), the plaintiff filed a civil action against the Government for negligence that was dismissed without prejudice in June 1995 because the plaintiff had failed to properly serve the attorney general. *Id.*  Although the district court's dismissal was without prejudice, the court noted in its order that the practical effect of the dismissal was to dismiss the case with prejudice because the statute of limitations had run.  *Id.*

A year later, in June 1996, the plaintiff filed a second lawsuit based on the same allegations, claiming that the statute of limitations had never been triggered because the letter setting forth the prospective denial had not been mailed via certified or registered mail.  *Id.*  The district court disagreed and dismissed the case, holding that because the plaintiff had received actual notice of the prospective denial, the statute of limitations had been triggered. *Id.* at 159.  On appeal, the plaintiff in *Flory* argued – just as Plaintiffs here argue – that "the denial letter sent by regular mail does not trigger the six-month period of limitation" under the explicit terms § 2401(b).

The Government in *Flory* relied on the same Tenth Circuit case cited by the Government here, *Pipkin v. United States Postal Service*, 951 F.2d 272 (10th Cir. 1991).  Just as in *Flory*, the *Pipkin* case involved actual notice of the agency denial – as opposed to strict compliance with § 2401(b) – and a second lawsuit filed by the plaintiff after a first lawsuit had been dismissed (in *Flory*

for improper service and in *Pipkin* for want of prosecution). *Pipkin*, 951 F.2d at 274. Just as in *Flory*, the *Pipkin* plaintiff had filed the first lawsuit within the six-month limitations period set forth in § 2401(b). Under those circumstances, the Tenth Circuit reasoned that it was "apparent that [the plaintiff] was not prejudiced by the agency's failure to send the arbitration decision to him by registered or certified mail." *Id.*

The *Flory* court, however, declined to reach the ultimate issue of whether there was – as the *Pipkin* court held – an exception to § 2401(b)'s "certified or registered mail" requirement. Instead, the Fifth Circuit noted that the plaintiff's first lawsuit had been dismissed for failing to serve the Attorney General of the United States as required by Federal Rule of Civil Procedure 4(i)(1)(B). The Government's motion to dismiss in the first lawsuit had been granted "because [the plaintiff] did not follow the letter of the law . . . ." *Flory*, 138 F.3d at 160. The court held that

> [t]he United States now wants us to look beyond the letter of the law, that plainly requires notice of denial sent by certified or registered mail, because [the plaintiff] received actual notice of denial. On the one hand, actual notice is insufficient for the United States, and on the other, it is sufficient. We decline to extend the reading of §§ 2401(b) and 2675(a) to include an actual notice exception in this case because "he who comes into equity must come with clean hands."

*Id.* (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814–15 (1945).

The Government in this case correctly points out that the holding in *Flory* appears not to have been an exercise in statutory interpretation so much as an effort to balance equities that were unique to the particular procedural posture of that case. However, absent further illumination by the Fifth Circuit, this Court is of the opinion that the outcome in *Flory* ought to be replicated here. Unlike the plaintiffs in *Pipkin* and *Flory*, the plaintiffs here filed their lawsuit more than six months after receiving actual notice of the agency's denial. So whereas the *Flory* and *Pipkin* plaintiffs were,

10

in fact, not prejudiced by the Government's failure to follow the letter of § 2401(b), the plaintiffs here most certainly would be where interpreting the statute to contain an exception for actual notice would, with prejudice, end their lawsuit.  Accordingly, this Court finds that Plaintiffs receipt of actual notice of agency denial did not trigger the six-month limitations period in § 2401(b) and, further, that Plaintiffs were permitted pursuant to 28 U.S.C. 2675(a) to "treat the agency's failure to act as a final denial" and file their civil action, as they did, "at any time thereafter." *McCAllister v. United States*, 925 F.2d 841, 844 (5th Cir. 1991).

## Conclusion

Having answered both contingent questions in the negative, Defendant's Motion to Dismiss (Dkt. No. 5) is hereby DENIED.  The parties are advised that a scheduling conference will be held in due course.

It is so ORDERED.

Signed this 27th day of February 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE