UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SHAYNE & KEITH LUNDY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-06-69 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER & OPINION

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Dkt. No. 16) and Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion for Summary Judgment (Dkt. No. 19). After considering the motions, the entire record and the applicable law, the Court is of the opinion that the motions should be denied.

## Factual and Procedural Background

This action arises out of Plaintiffs Shayne and Keith Lundy's contentions that United States Border Patrol agents wrongfully arrested and detained them in violation of their civil rights. At least for the purposes of its response to Plaintiffs' summary judgment motion, the Government does not appear to contest the general sequence of the events contained in the Affidavit of Shayne Lundy.[1] Thus, for the purposes of this Order, the Court presumes the events to largely have occurred as presented by Shayne Lundy's affidavit, which states the following:

> I, Shayne W. Lundy, on the night of 19 November, 2004 was at a club called Grahams with my brother, Keith W. Lundy, and his wife Jackie Lundy. We arrived at the club approximately 2100 hrs and decided to call it a night and head home at midnight. Keith went to the bar to close out his tab with the bartender; however, when Keith received his tab receipts the bartender was demanding an additional $20.

---

[1] Dkt. No. 16, Ex. A.

Keith's wife Jackie came to get me to help out at the bar, when I arrived my brother told the bartender, Eric, that he wanted to speak to the manager about the discrepancy. The manager arrived and Keith and I asked to speak to him in his office, instead the manager brought us out to the front of the club by the front door. Keith began to explain to the manager that the bartender had been demanding an additional $20 over what had been printed on his receipts. The manager refused to hear it and was being very indifferent to our problem with the bartender. At this point after agreeing to pay the additional $20 dollars to clear our tab, the money was out and being handed over to the manager, the bartender came up to the glass window between the front door and the bar area and started to smile and laugh at us. Keith pointed this out to the manager by saying something like, "That's the bartender I'm talking about", I then pointed my finger and said "Your dead motherf____r". The manager grabbed my arm and forced me against the wall where I struck him twice in the facial area, Keith tried to separate me from the manager when we became overwhelmed by security and bar employees. We were handcuffed and taken out of the bar and placed on the curb in public view. **The Laredo Police department was called and arrived on scene, they asked for our identification and I gave them my Military ID card and my Driver's License**. They then asked me what I did in the Military and I told them I was a Military Policeman for the last 11 years. The officer then asked if my brother, Keith, was in the service. Keith stated no, they then asked where he worked whereas he then told the Laredo Police Officer he was a "PA"[Border Patrol agent] here in Laredo. Keith and I then sat on the curb for the next thirty minutes, during which time I asked twice that my cuffs be loosened due to the tingling in my hands, the club security officer refused to loosen my cuffs claiming that it was within his one finger rule. I then tried to get something out of my back pocket and the handcuffs pushed up against the curb and became extremely tight since the officer hadn't double locked the cuffs. I then asked for them to be loosened and double locked, the security officer then complied with my request. The club management then allowed some older uninvolved individual to harass me about being in the service and what was going to happen to me. During this time the manager made the comment that this isn't Fort Bragg and he is lucky he didn't shoot me in the head for acting like this in Laredo. We were told we were barred from Graham's. **At this time a Border Patrol Unit from Laredo North Station arrived and told us that they would escort us off property** and that we couldn't come back. **We agreed, were uncuffed, and placed in the back of a Border Patrol SUV**. The agents again told us they were taking us off the club property. **I asked the agents to release my Military ID card, Keith advised them that I wasn't in the Border Patrol and they had no right to hold my identification or my person since it wasn't an immigration issue**. The driver of the vehicle, name unknown, stated an SIR [Significant Incident Report] would have to be generated and that he was taking us to [the Border Patrol station] to be dealt with. We were then taken to [the Border Patrol station], where **Keith told them again that they had no right to detain me or maintain control of my identification cards**, the agents refused to speak to me or release my identification. We were then escorted through the Sally

> Port into the station where we were met by an individual who was later identified to me as Field Operation Supervisor Sais and taken through the processing area in plain view of numerous agents and illegal aliens. We were then escorted into the back office and again told to standby and wait. **Once again the agents were informed that they couldn't detain me or maintain control of my ID**; **however**, **after a brief detention in the office FOS Sais returned and released my IDs and we were informed to leave the property**, Keith called his wife who met us at the station and took us home.

Dkt. No. 16, Ex. A (emphasis added).

The record further reflects that the Border Patrol agents and other persons identified in Shayne Lundy's affidavit believed Plaintiffs to be intoxicated during their altercation and arrest. Keith appears to have been the more inebriated of the two.

On the basis of these events, Plaintiffs filed suit seeking monetary relief against the Government pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.*, on the basis of the common law claims of false arrest and imprisonment.

On November 30, 2007, Plaintiffs filed their Motion for Summary Judgment (Dkt. No. 16). Although the Local Rules of the Southern District of Texas instruct that the Government's response was due on December 20, 2007, twenty days from Plaintiffs' filing, the Government failed to file its response until January 30, 2008.[2] The Government did not file a motion for extension of time or otherwise request leave from the Court to file its untimely response.

## Standard of Review

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering

---

[2] *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the Court for ruling 20 days from filing, responses must be filed by the submission date and failure to respond will be taken as a representation of no opposition); Dkt. No. 17.

a motion for summary judgment, the court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

Furthermore, if the moving party bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in its favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original). In such an instance, the movant is not entitled to summary judgment unless the evidence proffered conclusively establishes each

4

element of its claims. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998).  When

bearing the burden of proof on an issue, a movant's "showing must be sufficient for the court to hold

that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986).

## Discussion

### 1.     The Government's Response to Plaintiffs' Motion for Summary Judgment

Because Plaintiffs ask that the Government's response be stricken as untimely, the Court

must first determine whether it will consider the Government's filing when assessing Plaintiffs'

motion on the merits.  It is undisputed that the Government's response was filed approximately one

month after the deadline set forth by Local Rules 7.3 and 7.4.  *See* S.D. TEX. LOCAL RULES 7.3, 7.4.

If the Court has not yet considered a pending motion, however, and a response is filed after the

period allotted by the Local Rules, the Court may consider the response at its discretion.

Here, Plaintiffs have failed to allege, much less prove, that they would suffer prejudice if the

Court considered the Government's late response.  In fact, Plaintiffs put forth no argument

supporting their motion to strike aside from stating the uncontested fact that the Government's

response was untimely.  The Government, moreover, has proffered good cause for its late filing.

Specifically, the Government reports that the counsel of record in this matter has recently been

diagnosed with a serious medical condition of which the opposing party is aware.  Although the

Court wishes to make clear that it does not condone noncompliance with deadlines, the Court is

convinced that, in this situation, the Government's response was not so dilatory as to merit its

removal from consideration. Therefore, the Court will consider the Government's response when

assessing Plaintiffs' motion. Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion

for Summary Judgment is thus denied.

**2.      The Merits of Plaintiffs' Motion for Summary Judgment**

Plaintiffs seek relief pursuant to the common law claims of false arrest and imprisonment through the Federal Tort Claims Act.  Under the Federal Tort Claims Act, courts refer to the law of the state where the act or omission occurred as governing a plaintiff's substantive claims. *See* 28 U.S.C. § 1346(b); *see also Tovar v. United States*, C.A. No. 3:98-CV-1682, 2000 WL 425170, at *5-6 (N.D. Tex. Apr. 18, 2000) (citing *Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984)).

As the Fifth Circuit has observed, under Texas law, a false arrest is tantamount to effecting a false imprisonment. *Whirl v. Kern*, 407 F.2d 781, 790 (5th Cir. 1968). Moreover, Texas courts have recognized that elements of false arrest and false imprisonment are identical. *See, e.g.*, *Bertuca v. Martinez*, No. 04-04-00926-CV, 2006 WL 397904, at *5 (Tex. App.—San Antonio Feb. 22, 2006, no pet.). Under Texas law, to establish either claim, plaintiffs must show that a defendant implemented (1) a willful detention, (2) without the consent of the detainee and (3) without authority of the law. *Id.* (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644-65 (Tex. 1995) (citing *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)). A person can be detained through violence, threats or any other means that would restrain an individual from moving from one place to another. *Martinez v. Goodyear Tire & Rubber Co.*, 651 S.W.2d 18, 20 (Tex. App.—San Antonio 1983, no writ). Although a plaintiff need not necessarily actively resist detention, the means by which a plaintiff asserts they were restrained must actually result in the detention, and not mere intimidation of the person. *See Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.2d 726, 738 (Tex. App.—Amarillo, 2001, no pet.); *Broadnax v. Kroger Tex., L.P.*, No. 05-04-01306-CV, 2005 WL 2031783 (Tex.

6

App.—Dallas, Aug. 24, 2005, no pet.). Whether a plaintiff was detained without consent is a question of fact to be determined by a factfinder. *See, e.g.*, *Ramirez*, 59 S.W.2d at 738. To succeed on a claim of false arrest or imprisonment, plaintiffs need not establish that they suffered actual damages, as nominal damages are an available remedy. *See Landry v. A-Able Bonding, Inc*., 75 F.3d 200, 207 (5th Cir. 1996) (citing *Whirl v. Kern*, 407 F.2d 781, 798 (5th Cir. 1969).

The record before the Court fails to conclusively establish a claim for false arrest or imprisonment under Texas law. Plaintiffs concede that they consented to at least some portion of their detention. The scope of Plaintiffs' consent, however, is not entirely clear. The evidence before the Court plainly reveals that Plaintiffs, at a minimum, consented to their placement in the Border Patrol vehicle and removal from the property.

Plaintiffs appear to contend that either (1) their consent was limited to removal from the premises, and not transportation to the Border Patrol station, or (2) that once they were placed in the Border Patrol vehicle, they revoked or otherwise altered their consent. The Government appears to contend that Plaintiffs not only voluntarily agreed to enter the Border Patrol vehicle, but also consented to be transported to the Border Patrol station. A review of the record indicates that once in the Border Patrol vehicle, Shayne made a single request for the return of his identification and Keith, at various times, asserted that the Border Patrol agents were without authority to hold Shayne's identification or person. The evidence before the Court, however, also indicates that Plaintiffs were intoxicated, and that, between the two, Keith at least appeared more inebriated. Given these circumstances, one naturally questions both the scope of Plaintiffs' initial consent and the nature in which Plaintiffs informed the Border Patrol agents they desired the release of Shayne's identification and/or person.

7

Further clouding matters is the fact that Shayne does not appear to have requested his own release and neither brother appears to have requested Keith's release at any time. According to his affidavit, Shayne only requested that his identification be returned.  Keith, on the other hand, lodged complaints which seem to have only concerned the Border Patrol agents' treatment of Shayne.[3] Moreover, while Shayne requested the return of his identification, and Keith generally complained about the holding of his brother's identification and/or detention of his person, neither brother appears to have insisted that they be permitted to leave at any time. These circumstances lead the Court to conclude that there is an issue of fact as to whether Plaintiffs consented to their detention and the resolution of this issue is one better suited for determination at trial.

Plaintiffs have thus failed to establish that no issue of material fact exists concerning at least one essential element of their claims.  Therefore, Plaintiffs' Motion for Summary Judgment should be denied.[4]

## Conclusion

Based on the foregoing, Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion for Summary Judgment (Dkt. No. 19) and Plaintiffs' Motion for Summary Judgment (Dkt.

---

[3] The Affidavit of Shayne Lundy indicates that Keith only voiced issue with the treatment of his brother.  *See* Dkt. No. 16, Ex. A.  To the contrary, a Border Patrol investigatory report reveals that in an interview given on January 26, 2005, Keith claims that he protested both the treatment of himself and his brother. *See* Dkt. No. 16, Ex. B at 8. Reading this inconsistency in the favor of the non-movant, as the Court must, the Court concludes that Keith only objected to the treatment of his brother.

[4] Because the Court has identified a fact issue concerning one essential element of Plaintiffs' claims, it need not assess other potential grounds for denying Plaintiffs' motion, such as Plaintiffs' failure to have their motion signed by an attorney or whether the Border Patrol agents were acting under the authority of law.  *See* FED. R. CIV. P. 11(a); GEN. ORDER 2005-3, Administrative Procedures for Electronic Filing in Civil and Criminal Cases, ¶8.  Moreover, the parties' briefing on the issue of whether the Border Patrol agents acted within their legal authority was so woefully inadequate as to make it imprudent for the Court to consider the issue at this time.

8

No. 16) are hereby DENIED.

It is so ORDERED.

Signed this 23rd day of April, 2008.

_John D. Rainey_
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE